UNITED STATES BANKRUPTY COURT
EASTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| In Re: Daniel Jay Cho, | Bankruptcy Case No. 24-25518-gmh |
| Debtor. | (Chapter 7) |

---

| | |
|---|---|
| Jessica Lee, | |
| Plaintiff, | |
| | Adversary Case No. |
| Daniel Jay Cho, | |
| Debtor-Defendant. | |

---

## COMPLAINT

Plaintiff, Jessica Lee ("Lee"), by her attorneys Kerkman & Dunn, pursuant to Sections 1141(d)(2) and 523(c)(1) of the United States Bankruptcy Code (the "Code") and Rule 7001(f) of the Federal Rules of Bankruptcy Procedure, brings this adversary proceeding to determine that the debts owed by Debtor, Daniel Jay Cho (the "Debtor") to Lee are non-dischargeable pursuant to Sections 1141(d)(2) and 523(a)(6) and 523(c)(1) of the Code.

Lee respectfully alleges as follows:

### PARTIES

1. Plaintiff Lee is an individual resident of the state of California and a creditor of Debtor and is listed as a creditor in the Debtor's schedules.

2. Debtor is an individual resident of the state of Wisconsin and debtor under Chapter 7 of the Code.

## JURISDICTION AND VENUE

3. The Debtor filed his voluntary petition for relief under chapter 7 of the Bankruptcy Code on October 16, 2024.

4. This Court has jurisdiction pursuant to Sections 157 and 1334(b) of Title 28 of the United States Code ("Title 28").

5. This adversary proceeding constitutes a "core" proceeding within the meaning of Section 157(b)(2) of Title 28, subsection (b)(2)(I). This adversary proceeding arises in or under, and is related to, the above-captioned case pending before this Court.

6. This action is brought as an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(f).

7. Venue is proper in this District pursuant to Section 1409 of Title 28.

## RULE 7008 STATEMENT

8. Lee does not consent to the entry of final orders or judgement by the Court on her underlying state law claims against the Debtor.

## FACTS IN SUPPORT OF PLAINTIFF'S CLAIMS

9. On or about October 2011, Lee and Debtor entered a serious romantic relationship.

10. The relationship lasted until on or about October 2020.

11. By 2019 and reaching full severity in 2020, Lee suffered repeated physical, verbal, mental, emotional, and financial abuse by the Debtor.

12. Debtor's conduct included persisted with unrelenting physical confrontations with Lee.

13. Debtor violently screamed at Lee and threw objects around the bedroom if Lee failed to comply with his demands.

14. Debtor shoved and grabbed Lee then pushed her to the ground.

15. Debtor swung a metal baseball bat near Lee in a threatening manner. The erratic and forceful swinging of the bat due to Debtor's intense rage, anger, and aggression created an atmosphere of imminent danger, causing Lee to genuinely fear for her life.

16. On or about July 29, 2020, Debtor became enraged in the apartment shared with Lee.

17. Debtor picked up a metal baseball bat that he owned and started swinging it wildly around the room looking for things to break.

18. Debtor slowly raised the bat, suggesting that he was going to break the glass table.

19. Lee tried to prevent Debtor from breaking her table by grabbing his arm to stop it.

20. Debtor responded by grabbing Lee's arm and pushing her to the ground and screaming at her. Lee was terrified for her life.

21. Debtor used constant verbal threats that he would assault Lee.

22. Debtor violently destroyed Lee's personal property.

23. On or about May 23, 2020, to intimidate and instill fear in Lee, Debtor violently smashed her chair.

24. On or about June 14, 2020, Debtor threatened to break Lee's laptop when she got home from work, unless she sent money to his account.

25. On or about July 19, 2020, Debtor smashed a second chair belonging to Lee to pieces.

26. On numerous occasions, Debtor threatened to beat up Lee or assault her.

27. Debtor prevented Lee's free movement throughout the home based on fear, and disallowing her reentry into the home at times until she found a way to obtain more money for Debtor to gamble.

28. Debtor humiliated Lee in front of friends, family, colleagues, business associates, and other third parties, especially if male.

29. Debtor verbally and mentally abused Lee assiduously throughout the entire relationship, especially the entirety of the last four years of the relationship.

30. Debtor repeatedly and frequently used sexually vulgar and derisive names to describe Lee.

31. Debtor belittled Lee by telling her that she is no good, does not deserve to be loved, and does not deserve safety, unless she deposits money into the Debtor's account.

32. Debtor isolated Lee by demanding that she defriend all friends or contacts, especially male, on social media and required her to no longer converse with any friends or make any new male friends.

33. Debtor threatened Lee with physical violence if she spoke to any males, drank alcohol, or did anything Debtor considered a mistake or did not have his prior approval.

34. Debtor threatened to drive to Lee's place of employment and assault her male coworkers.

35. Debtor stormed out of the house while cursing at Lee with profanity and threatening to leave the home and break up with her if she did not provide him more money for gambling.

36. Debtor intimidated Lee and mentally abused her with statements to the effect that "I shouldn't own a gun because I know what I would do with it."

37. Debtor threatened Lee stating he would hurt her if she attempted to stop him amidst fits of rage and anger.

38. Debtor threw objects purchased as gifts for Lee, such as flowers, around the house in a fit of rage and swinging them at Lee.

39. Debtor financially and emotionally abused Lee by constantly demanding she take out more and more loans, cash advances, credit cards, credit card cash advances, sell her assets, sell shares in her employer, overdraft bank accounts, give Debtor credit cards to use freely, or do literally whatever else she needs to do to provide him with money for gambling.

40. Debtor threatened to hurt Lee if she did not comply with his demands.

41. As a result, Lee incurred approximately $161,000.00 of coerced debt, not including all fees and penalties.

42. Debtor's acts of physical, emotional, and financial abuse during his relationship were intended to cause Lee harm and did cause her harm.

43. The coerced debt, mental and emotional distress, were the inevitable product of the Debtor's abusive behavior against Lee.

44. Lee filed a lawsuit against Debtor, styled *Jessica Lee v. Daniel Cho*, bearing Case No. 30-2022-01294975-CU-PO-WJC, filed in the Orange County Superior Court, State of California (the "California Litigation").

45. The California Litigation was filed November 30, 2022.

46. The complaint in the California Litigation asserted five causes of action: i) Assault; ii) Battery; iii) Intentional Infliction of Emotional Distress; iv) California Civil Rights Violation (Cal. Civ. Code §§52.1(B), (C), and 51.7); and v) Domestic Abuse (Cal. Civ. Code §1708.6.).

47. On October 3, 2024, a hearing was held in the California Litigation on Debtor's motion for summary judgment. The California Court held that three of Lee's claims were barred by applicable statute of limitations; however, the Court denied Debtor's motion as to Lee's claims for California Civil Rights Violation and Domestic Abuse.

48. The California Court then scheduled a hearing on the pending discovery motions for November 9, 2024, with trial on Lee's remaining claims scheduled for November 22, 2024.

49. The Debtor filed the petition in this bankruptcy case on October 16, 2024, staying the California Litigation.

50. As of the Debtor's bankruptcy filing, Lee was continuing to pursue her claims against the Debtor in the California Litigation for California Civil Rights Violation and Domestic Abuse.

### CLAIM UNDER 11 U.S.C. § 523(A)(6)
### WILLFUL AND MALICIOUS INJURY

51. Lee hereby incorporates the allegations set forth above herein.

52. Section 523(a)(6) of the Code exempts from discharge debts for willful and malicious injury by the debtor to another entity or to the property of another entity.

53. A determination that a debt is non-dischargeable under Section 523(a)(6) fo the Code requires that the Debtor caused "willful and malicious injury." *Kawaauhu v. Geiger,* 523 U.S. 57, 61, 118 S. Ct. 974 (1998). Injury resulting from trespassory intentional torts generally qualify under the "willful and malicious injury" standard, provided the debtor desired or anticipated injury. *Id.* at 62. "A person intends to cause injury when he 'desires to cause consequences of his act, or … he believes that the consequences are substantially certain to result from it." *In re Soliman*, 515 B.R. 179, 191 (Bankr. S.D.N.Y. 2014).

-6-

Case 25-02050-gmh    Doc 1    Filed 04/18/25    Page 6 of 7

54. The Debtor desired and intended to cause Lee mental, emotional, and financial harm. He further knew that a repeated pattern of abusive behavior would cause Lee mental and emotional distress. Debtor knew that causing Lee to take on the coerced debt would cause her financial harm.

55. Lee has been damaged by the Debtor's abuse and sustained losses because of the abuse. Specifically, Lee has suffered coerced debt of over $161,000 and mental and emotional distress.

ACCORDINGLY, Lee requests that this Court enter judgment in her favor and against Debtor:

A. Determining that the debt owed by Debtor to Lee, including any award of attorney's fees she may obtain in the California Litigation, is non-dischargeable pursuant to Section 523(a)(6) of the Code;

B. Ordering Debtor to pay the costs of this adversary proceeding, including the adversary filing fee and all other statutory fees; and

C. Granting such other relief as the Court deems just and appropriate.

Dated April 18, 2025.

/s/Evan P. Schmit
Evan P. Schmit
Kerkman & Dunn

Attorneys for the Plaintiff

P.O. Address:

839 N. Jefferson St., Suite 400
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: eschmit@kerkmandunn.com